(115 App. Div. 761)

### HART v. VILLAGE OF CLINTON.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—LIABILITY OF MASTER—APPLIANCES—ELECTRICAL APPARATUS AND STRUCTURES.

Plaintiff, who was employed by defendant village to aid in stringing wires for its electric lighting system, was injured by the falling of an extension ladder on which he was at work. The ladder was placed up against, and about six inches from the outer end of, a mast arm projecting from a pole, extended above it 18 or 20 inches, and was planted squarely on the ground. *Held*, that defendant was not negligent, either in providing an extension ladder, instead of a tower on a wagon or a ladder of different construction, or for failure to provide hooks and spikes to hold the ladder to the mast arm and a man to steady the mast arm or hold the foot of the ladder, in the absence of a showing that the use of an extension ladder had been attended with peril to the workmen, or that the mast arm was out of place or unsteady.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 210.]

Appeal from Trial Term, Oneida County.

Action by Bernard Hart against the village of Clinton. From a judgment for plaintiff, and order denying new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Frederick G. Fincke, for appellant.
D. E. Powers, for respondent.

SPRING, J. The plaintiff was employed by the defendant to aid in stringing wires for its electric lighting system. On the 30th of January, 1905, while on a ladder engaged in this work, the ladder fell, precipitating him to the ground, and inflicting the injuries for which he seeks to hold the defendant responsible.

The plaintiff and George E. Adams, who it is claimed by the plaintiff was the foreman having charge of the undertaking, were the only men on the day of the accident who were performing this particular work. The pole was in place and also a mast arm, which was a hollow metal tube about two inches in diameter, projecting from the pole about 20 feet and the same distance above the ground, and was designed for holding the electric lamp. This mast arm was held in place to the pole by guy rods, and there is no evidence to show any imperfection in its

construction or in the manner of fastening it to the pole. The lamp was to be attached to a rope running through a pulley at the outer end of the mast arm, the rope then to go through the arm and a pulley at the pole, and down the pole to be fastened to a staple close to the ground. Adams and the plaintiff were engaged in putting this rope through the mast arm. Adams had placed an ordinary extension ladder about 30 feet in length up against the mast arm and climbed the pole. The ladder was about 6 inches from the outer end of the mast arm and extended above it 18 or 20 inches, and the bottom "was planted squarely on the ground." According to the plaintiff's testimony, Adams told him "to go on up; it's all right." The plaintiff went up the ladder and attempted to pull a wire with a rope fastened to it through the mast arm, but was unable to get it through. He told Adams, if he had a handline, he could pull it through from the ground, and Adams told him to go down and get the line. The plaintiff started to descend the ladder, and it slipped or fell, carrying him to the ground. In his version of the way the ladder went down he said:

"As I commenced to go down, I felt the ladder go. I couldn't tell exactly how far I had proceeded down before I felt the ladder go. It was not far. I had just nicely got started. I should think I had got down two or three rounds before the ladder fell. Then I simply felt it go forward. It went right straight forward. * * * I don't know how this ladder fell. I don't know whether it slid one way or the other, or went under the mast arm. When I saw it, it was below the mast arm. That is all I know on that subject."

There is no suggestion that the ladder was defective in its construction, and the plaintiff does not enlighten us as to the particular manner in which it fell, and we are equally in the dark as to the cause of its fall. The plaintiff, however, claims that the ladder was an improper appliance to be used in carrying on this work. He has given testimony tending to show that a tower on a wagon or a ladder of different construction is the safer appliance for the workman. On the other hand, the defendant has given abundant testimony as to the frequency with which an extension ladder is used in the performance of this work. The defendant was not called upon to use any particular method or appliance in the stringing of this rope. Its obligation to its employés required it to exercise diligence in furnishing appliances which were reasonably safe. Because an expert may prefer some other method or some other appliance than that which long experience has justified as a fairly safe one does not impose upon the defendant the necessity of making a change. There is nothing to show that the use of an extension ladder had been attended with peril or disaster to the workmen, although it had long been extensively used. In Quigley v. Levering, 167 N. Y. 58, at page 63, 60 N. E. 276, at page 278, 54 L. R. A. 63, the court, in commenting upon the obligation the master owes to his employé to furnish safe machinery, uses this language:

"He is not called upon to procure other devices to secure greater safety, provided those furnished by him are reasonably safe. The test of responsibility is not whether he omitted to do something that he could have done, but whether he was reasonably careful and prudent."

The court also permitted the jury to find that the defendant was negligent in not providing hooks and spikes to hold the ladder to the

mast arm, and in also omitting to furnish a man to steady the mast arm or hold the foot of the ladder. There is no evidence to show that the mast arm was out of place or unsteady, and the plaintiff testified that the ladder was squarely planted on the ground, and his counsel now says that it is "entirely improbable and inconceivable" that the ladder slipped at the bottom. There is no evidence imposing the duty upon the defendant either to provide a man to hold the mast arm or the ladder at the bottom, and in the ordinary carrying on of work of this kind that course had not been adopted. The plaintiff was a man of mature age. He had been working for this defendant about four weeks in the placing of these electric lamps, although this was the first time he had assisted in pulling rope through the mast arms. He was familiar with the use of the extension ladder. It was a simple contrivance. He knew as much about it and its use as Adams did. It is not claimed he needed to be instructed. It has been repeatedly held that, if injuries befall an employé from the use of a simple implement or contrivance of this kind, the master is not liable. Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; Hall v. U. S. Canning Co., 76 App. Div. 475, 78 N. Y. Supp. 617; Cunningham v. Pierce, 112 App. Div. 65, 98 N. Y. Supp. 60.

We think the evidence fails to show any negligence on the part of the defendant, and this conclusion renders it unnecessary to consider the question of assumption of risk by the plaintiff, or whether Adams was exercising an act of superintendence at the time, or the other questions discussed by the counsel.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.