William R. McMillan, Respondent, *v.* The Minetto Shade Cloth Company, Appellant.

Fourth Department, July, 1908.

**Master and servant — negligence — injury by failure of simple implement — when master not liable.**

While a master must furnish suitable appliances he is not liable in damages for injuries to his servants, resulting from the use of a simple instrument, as for example, a board having a file fastened to its face to be used for smoothing revolving rollers where the manner of using the same was plain and it did not require an experienced mechanic to understand its construction and the contrivance had been in long use without causing injury.

Where it appears that the plaintiff knew where several such boards available for the work were stored, the act of the master's superintendent in selecting one of them was a mere detail in the prosecution of the work.

In the use of simple instruments an employee who has judgment is charged with the duty of watching them and the master is not accountable for easily remedied defects which occur during the progress of the work.

Thus, where an injury resulted because one of the cleats nailed to such board became loose, and it was a simple matter to refasten it, the master is not liable for a failure to furnish a suitable appliance.

Nor can liability be based upon the fact that the nails holding the cleat were not clinched, where the device had worked safely for a long time and no complaint that it was imperfect had ever been made.

Appeal by the defendant, The Minetto Shade Cloth Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 19th day of January, 1909, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 18th day of January, 1909, denying the defendant's motion for a new trial made upon the minutes.

*Elisha B. Powell,* for the appellant.

*W. B. Baker,* for the respondent.

Spring, J. :

This is an action of negligence brought in pursuance of the Employers' Liability Act (Laws of 1902, chap. 600), and the sole question submitted to the jury involving the negligence of the defendant

was whether the plaintiff had been furnished a reasonably safe implement or appliance in the performance of the work he was assigned to do.

The defendant is a domestic corporation engaged in the manufacture of window shades from cotton cloth. Its plant is located in the village of Minetto, Oswego county.

The plaintiff, a man fifty-six years of age at the time of his injury, had been in the defendant's employ and working about its factory for some eight years prior to such time. On May 3, 1907, he was set to work with one Dodge operating one of the defendant's machines called a padder. This apparatus, so far as pertinent, consisted of two rollers set in a frame, one above the other, the lower or smaller one, being of brass and nine inches in diameter, and the upper one, some fourteen inches in diameter, being of hard rubber with an iron core. Below these rollers was located a mangle consisting of a trough in which a wooden roller revolved. The trough was kept supplied with a preparation or compound called "filler," which is a fluid substance pressed into the fabric to make it heavier and denser and suitable for shade purposes. The cloth, coming from other parts of the machine, passed around the wooden roller in the trough, becoming covered with the filler, then up to and between the brass and rubber rollers, which pressed the filler into the cloth. On the left end of the brass cylinder were cogs or gears which turned it. The rubber roller, weighing some 900 pounds, had no gears, but rested on the brass roller and because of its weight turned with it. Both rollers revolved toward each other, the brass roller turning upward and the rubber one downward. Attached to the rubber roller at each end were adjusting screws so that it might be raised upward from the brass roller.

Two strips or widths of cloth were run parallel through the rollers at the same time, there being a space between the strips and a margin at each side where the cloth did not touch the rollers. After constant use the rollers became worn where they came in contact with the cloth, and thus the surface was uneven. This was especially so with the rubber cylinder. From time to time, as necessity required, for the purpose of overcoming this inequality and unevenness, the rollers were ground, the brass roller being filed and the rubber one sandpapered. In order to grind the brass roller the

upper roller was raised from it about eight inches. The operator then took a board about eight or nine feet long, five or six inches wide and one inch thick, on one side of which was attached a file and on the opposite side usually three cleats, each one inch in thickness. This is the implement which it is claimed was unsafe. Running across the back of the frame and about eighteen or nineteen inches from the rollers and about ten inches above the brass one was a rod called a stay. The board was caught on the stay and held in place by the cleat, and rested upon and extended below the roller so that the file came in contact with the brass roller which revolved at the rate of nearly 180 revolutions a minute. The operator did the filing by pressing down on the board with his hands. When the rubber was sandpapered it was lowered so as to come into contact with the brass one and which caused it to revolve. Sandpaper was attached to the board on the opposite side from the cleats, and the roller was revolved more slowly to prevent heating by friction, turning at about fifty revolutions per minute. The operator then by pressing upon the board and sliding it along the stay was enabled to grind and smooth the roller to an even surface.

The plaintiff worked on this machine for two weeks, and on May seventeenth was directed by Kospoth, the defendant's superintendent, with said Dodge, to grind the rollers. This was the first time the plaintiff had ever done this work of grinding. Early in the day in question Kospoth gave the plaintiff one of these boards, of which there were several at hand, and showed him how to grind the brass roller. He worked at this filing until it was completed, which was between eleven o'clock and noon. He was then set to work sandpapering the rubber roller, and continued at this occupation until about two o'clock, when, as he testified, one of the cleats pulled off from the board he was using, causing him to lose his balance and fall forward toward the rollers and his left hand was caught between them and he was severely injured.

It appeared that either of the three cleats could have been used. The cleat which pulled off was nailed on with twenty-two six-penny nails, eleven of which were driven from the board into the cleat, and a like number from the cleat into the board. The nails were just the length of the thickness of both the cleat and board, but did not clinch. Other boards for the work were at hand, as the plain-

tiff knew. He examined the board used and testified the cleats were tight. There was no defect in the implement when handed to the plaintiff. No cleat was loose. The sandpaper was worn and he assisted the superintendent in tacking on a fresh piece. He carried on the work for several hours with the board in his hands, and if the cleat worked loose he could readily have observed its condition and have held the appliance on the stay by another cleat. The plaintiff was not a novice in the factory. He was of middle age, had been employed by the defendant about the factory for eight years and was familiar, in a general way, with this machinery. The implement he used was a simple contrivance, and the work he did with it was not complicated or difficult to comprehend.

There are two or three plain principles of the law of negligence applicable to the existing facts which debar a recovery.

(1) We appreciate the rule which requires the master to furnish suitable appliances for his servant; and we assume that Kospoth, the superintendent, was the defendant in delivering the board to the plaintiff. It has, however, often been held that a master is not liable in damages for injuries to his employee resulting from the use of a simple implement. (*Hart* v. *Village of Clinton,* 115 App. Div. 761, 764; *Smith* v. *Green Fuel Economizer Co.,* 123 id. 672.)

The fitting of the board for grinding with the file, or smoothing the rubber roller, was obvious to any man of judgment. An experienced mechanic was not required to understand its construction. The manner of its use was also plain. The contrivance had long been used and without injuring any one.

(2) It appears that there were other boards equipped and available for this grinding, and plaintiff knew where they were stored. Kospoth exercised his judgment in the selection which he made, and the furnishing of the board was a mere detail in the prosecution of the work and the running of the machinery. (*McConnell* v. *Morse I. W. & D. D. Co.,* 187 N. Y. 341; *Vogel* v. *American Bridge Co.,* 180 id. 373; *Mahoney* v. *Cayuga Lake Cement Co.,* 126 App. Div. 164.)

(3) In the use of simple implements the employee of judgment is charged with the duty of keeping watch of them, and for defects which occur while the work is in progress and which may easily be remedied, the master is not accountable. The nailing on of these

cleats was a simple matter not requiring a skilled mechanic, and the plaintiff himself understood this. The rule that the master is liable in damages for failure to furnish suitable appliances does not extend to a case of this kind. (*Cregan* v. *Marston*, 126 N. Y. 568.)

Nor do we think the fact that the nails were not clinched through the cleat was a defect charging the defendant with negligence. The device had worked safely for a long time, and no complaint was ever made that it was imperfect or unsafe. In any event, its condition was patent to the plaintiff.

In the case of *Pelow* v. *Oil Well Supply Co.* (194 N. Y. 64), relied upon by the respondent's counsel, the employee was a lad sixteen years of age and not experienced in the business. He was handling prosser pins which had become dangerous from use, and all the pins accessible to him were in like dangerous condition. The boy was set at the new and dangerous work without any instruction. In this case the plaintiff was instructed in the use of the contrivance, and the accident did not occur by reason of any lack of knowledge in the handling of the implement. The two cases are not parallel.

The judgment should be reversed and a new trial ordered.

All concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.

---

The People of the State of New York ex rel. Leonard Drake, Relator, *v.* William S. Andrews, Justice of the Supreme Court of the Fifth Judicial District of the State of New York, and of the Trial Term of the Supreme Court, Oneida County, N. Y., and Others, Respondents.

Fourth Department, July 6, 1909.

Contempt — review by certiorari — subpœna duces tecum not mandate — resistance to lawful mandate — counseling witness to disobey subpœna.

Certiorari is a proper remedy to review an order committing the relator for contempt of court.

A subpœna requiring a witness to produce books and papers before a grand jury is not a mandate of the court within the meaning of section 8 of the Code of