ALBERT J. PELOW, an Infant, by LUCY PELOW, His Guardian ad Litem, Respondent, *v.* OIL WELL SUPPLY COMPANY, Appellant.

### Negligence — assumption of risk — duty of master toward inexperienced employee.

The duty of furnishing safe tools and appliances to his employees and of giving proper warning and instruction to one engaged in work which is or is likely to become dangerous, rests upon the master and cannot be delegated.

A lad of sixteen, not fully acquainted with the business in which he was engaged, does not assume a risk of which he knows nothing, and is not guilty of negligence, as matter of law, for using imperfect tools, when he neither knows where he could get others nor that by using them he might be injured.

A risk, which might have been obvious to a competent and experienced mechanic, cannot be held, as matter of law, to be obvious to or assumed by an inexperienced boy placed at unfamiliar work with unsafe tools, without warning or instruction.

*Pelow* v. *Oil Well Supply Co.*, 125 App. Div. 903, affirmed.

(Argued December 11, 1908; decided January 5, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 27, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Elisha B. Powell* and *George L. Roberts* for appellant. There is no evidence of any negligence on the part of the defendant. The only negligence shown is that of the plaintiff and of his co-servants for which the defendant is not liable. It was error to refuse a nonsuit. (*Crown* v. *Orr*, 140 N. Y. 450.; *Beckley* v. *G. R. Co.*, 113 N. Y. 540; *Vogel* v. *A. B. Co.*, 180 N. Y. 373; *McConnell* v. *M. I. W. & D. D. Co.*, 187 N. Y. 341; *Walsh* v. *C. S. L. Co.*, 11 Misc. Rep. 3; *Cregan* v. *Marston*, 126 N. Y. 568; *Kellogg* v. *E. Co.*, 120 App. Div. 410; *Fassani* v. *N. Y. C. & H. R: R. R. Co.*, 109 App. Div. 404; *Paul* v. *W. C. K. Co.*, 113 App. Div. 515; *Buchanan* v. *R., W. & O. R. R. Co.*, 10 N. Y. S. R. 326.)

*J. R. O'Gorman* for respondent. The defendant owed the duty to the plaintiff of furnishing adequate and suitable tools and implements for his use, and a safe and proper place in which to prosecute his work, and, when needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his duties. (*Pantzer* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 522; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Gage* v. *D., L. & W. R. R. Co.*, 14 Hun, 446; *O'Keefe* v. *G. N. E. Co.*, 105 App. Div. 8; *Byrne* v. *Eastmans. Co.*, 163 N. Y. 461; *Stackpole* v. *Wray*, 99 App. Div. 262.) The duty of the defendant to keep in repair the machinery, tools, appliances and implements it furnished to the plaintiff was as absolute as the duty of the defendant to furnish adequate and suitable tools and implements for the work to be performed, and cannot be delegated by the defendant to its superintendent or foreman so as to relieve it from liability for its non-performance. (*Scandell* v. *C. C. Co.*, 50 App. Div. 512; *McGuire* v. *B. T. Co.*, 167 N. Y. 208; Shearman & Redfield on Neg. [5th ed.] § 194; *Kain* v. *Smith*, 80 N. Y. 458; *Probst* v.

*Delamater*, 100 N. Y. 266 ; *Tallone* v. *C. S. Co.*, 9 App. Div. 145 ; *Doring* v. *O. & W. Co.*, 151 N. Y. 579 ; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 567 ; *Byrne* v. *Eastmans Co.*, 163 N. Y. 461 ; *Hankins* v. *L. E. & W. R. R. Co.*, 142 N. Y. 416 ; *Mayer* v. *Liebmann*, 16 App. Div. 54.)

Vann, J. On the 25th of January, 1905, the plaintiff, then a lad of about sixteen years, while at work for the defendant in its boiler manufactory in the city of Oswego, met with an accident which resulted in the loss of his left eye. The factory, 400 feet long by 200 wide, was divided into several departments with a foreman in charge of each. The plaintiff had been employed by the defendant for about three weeks and during this period had worked exclusively upon automobile boilers, which are quite small, being only about two feet long and a foot and a half in diameter, with copper tubes half an inch in thickness. On the day in question he was sent by the assistant superintendent in charge of the work upon which he was then engaged to help one McKinstry on a stationary boiler in another department of the factory. This boiler was of large size, being sixteen or eighteen feet long and four or five feet in diameter, with iron tubes three inches thick. The work assigned to him in this new place was what is called "prossering," which is described as inserting an appliance called an expander in the end of the tube when it is in position in the boiler, placing a prosser pin about three inches thick in the expander and striking the pin with a sledge hammer, weighing about seven pounds, three times and, after turning the pin around half way, three times more. The pin is then loosened by a light blow on the side, pulled out and inserted with the expander in the next tube when the process is repeated. The plaintiff was directed by the assistant superintendent to "go and work with Rob. McKinstry on the stationary boiler and prosser flues," but he said nothing else to him. The plaintiff asked no questions but did as he was told.

There were but four prosser pins in that department of the

factory and they were all " burred," that is, by repeated blows of the sledge the ends had become widened out and a collar of ragged iron had formed around the edges. A pin in that condition is apt to throw off small chips of iron from the collar when struck by a heavy sledge in the ordinary work of prossering. The plaintiff was set at this work without knowledge of the danger, although he had casually observed the process of prossering with large pins " a couple of times before," but he had never used them himself. He had no instructions as to how to do the work, or how to take care of himself and no rules upon the subject were made, at least until after he was injured. When a prosser pin is " burred," it should be taken to an emery wheel and the " burrs " ground off, or to a blacksmith shop and repaired. The plaintiff, however, knew nothing about this. The prosser pins used on the auto boilers where he had been working are very small and the hammer is of corresponding size. The sledge furnished to the plaintiff was chipped off at the end and one piece of considerable size had been broken off so as to leave the face of the hammer only about one inch in diameter with irregular edges. The assistant superintendent knew about this condition of affairs and complaint had been made to him about the burred prosser pins, which were shown to him, but he made no reply except on one occasion when he said it was all right.

The plaintiff on the day in question used the pin and hammer furnished by the assistant superintendent, who was in general charge of the work to which he was assigned. He worked at the foot and McKinstry at the head of the boiler, which, sixteen or eighteen feet long and four or five feet high, was between them. No one stood by the plaintiff to observe his work or to tell him how to do it. After prossering ten tubes he was engaged upon the eleventh, when striking the pin a blow with the sledge in the usual way a small piece of steel chipped off from the burr, struck him in the eye and injured it so that ultimately it had to be removed. The piece of steel was found in the eyeball after it was taken out. The operating surgeon testified that " it had gone into the front

of the eye, traversed the diameter of the eye and gone to the back side." The plaintiff had been at work but fifteen minutes on the new kind of employment when the accident happened. The object of this action, which is in the common-law form, was to recover damages for the injuries sustained by the plaintiff on the occasion in question, and the facts are presumed to have been found by the jury as thus stated, for they are supported by some evidence, although there was a sharp conflict in the statements of the witnesses called by the parties. The jury found for the plaintiff, the Appellate Division affirmed the judgment entered on the verdict, one of the justices dissenting, and the defendant appealed to this court.

It is the general duty of a master to furnish his servants with safe tools and appliances, and it was the special duty of the defendant when directing a boy to work with large prosser pins, which become dangerous through use, to give him proper instructions so that he could take care of himself, or else to make and publish rules for the instruction of all employees engaged in such work. Although evidence was given in behalf of the defendant to the contrary, the jury might have found that there were but four prosser pins in the department to which the plaintiff was suddenly transferred and that all of them were burred and in a dangerous condition. There were other prosser pins in other departments of the factory, and evidence was given tending to show that the assistant superintendent had prosser pins with other implements locked up in a cupboard in his office and that he ordinarily furnished them upon requisition being made therefor, but the plaintiff did not know about this and he used the tools and appliances that were given him. He did not select the prosser pin or the hammer and did not know there was a place where hammers and pins were kept. He did not know that a burred prosser pin is dangerous or of its tendency to throw off chips when struck by the hammer. He did not assume a risk of which he knew nothing and he was not guilty of negligence as a matter of law for using

burred prosser pins, when he neither knew where he could get others or that by using these he might be injured.

The main position of the defendant is that there was no evidence of negligence on its part and that the only negligence shown was that of the plaintiff and his co-servants. The duty of furnishing safe tools and appliances to his employees belongs to the master and the defendant did not meet that obligation. The duty of warning and instructing a new employee, assigned to work of more or less danger, belongs to the master and the defendant did not discharge it. When the assistant superintendent set the plaintiff at the new work which he knew was dangerous to some extent, he should not only have seen that he had safe tools and appliances, but should also have given him proper warning and instruction, so that he could protect himself. This duty rested upon the master, as such, at the inception of the new work by the plaintiff, and it could not be delegated except at the defendant's risk. (*Simone* v. *Kirk*, 173 N. Y. 7, 14.) The implements in fact furnished were defective, as the jury could find, and the plaintiff was not told where he could get safe ones. He did not know that they were unsafe, for he had neither experience nor warning to guide him. He had the right to assume that his employer had discharged its duty toward him and that he could safely use the tools he was told to use. Even if the risk would have been obvious to a competent and experienced mechanic, we cannot hold as matter of law that it was obvious to an inexperienced boy put at a new kind of work with unsafe tools and without warning or instruction. The duty and the acts of both parties should be viewed in the light of the plaintiff's age and inexperience, and when thus viewed I think the evidence warranted the jury in finding the defendant guilty of negligence and the plaintiff not guilty of contributory negligence.

The judgment should be affirmed, with costs.

Cullen, Ch. J., Edward T. Bartlett, Werner, Willard Bartlett and Hiscock, JJ., concur; Gray, J., dissents.

Judgment affirmed.