McMILLAN v. MINETTO SHADE CLOTH CO.

(Supreme Court, Appellate Division, Fourth Department.    July 6, 1909.)

1. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—USE OF SIMPLE IMPLEMENTS.

A master is not liable for injuries to an employé from the use of a simple implement, as where an employé was required to use a board for grinding or smoothing rollers in a factory; its fitness for the work being obvious to any man of judgment, an experienced mechanic not being required to understand its construction, the manner of its use being plain, and the contrivance having long been used without injuring any one.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 180; Dec. Dig. § 101.*]

2. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—USE OF IMPLEMENT FURNISHED BY SUPERINTENDENT.

Where an employé in a factory was injured by using a board furnished by the superintendent for grinding and smoothing rollers, and it appears that there were other boards equally available for the work and the employé knew where they were stored, it must be held that the superintendent exercised his judgment in the selection, and that the furnishing of the board was a mere detail in prosecuting the work and running the machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 180; Dec. Dig. § 101.*]

3. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—USE OF SIMPLE IMPLEMENT.

In the use of simple implements, the employé of judgment is charged with the duty of keeping watch of them, and for defects which occur while the work is in progress, and which may be easily remedied the master is not accountable, and so the rule as to liability for failure to furnish suitable appliances does not extend to the case of the nailing of cleats on a board, which is a simple matter, not requiring the services of a skilled mechanic, and which the employé using it himself understood.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 199; Dec. Dig. § 107.*]

4. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—DEFECT IN IMPLEMENT CONSTITUTING NEGLIGENCE.

The fact that nails were not clinched through a cleat on a board used by an employé is not an act of negligence where the device worked safely for a long time, and no complaint was ever made that it was imperfect or unsafe, and its condition was patent to the employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 614; Dec. Dig. § 219.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Oswego County.

Action by William R. McMillan against the Minetto Shade Cloth Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Elish B. Powell, for appellant.
W. B. Baker, for respondent.

SPRING, J. This is an action of negligence brought in pursuance of the employer's liability act (Laws 1902, p. 1748, c. 600), and the sole question submitted to the jury involving the negligence of the defendant was whether the plaintiff had been furnished a reasonably safe implement or appliance in the performance of the work he was assigned to do.

The defendant is a domestic corporation engaged in the manufacture of window shades from cotton cloth. Its plant is located in the village of Minetto, Oswego county. The plaintiff, a man 56 years of age at the time of his injury, had been in the defendant's employ and working about its factory for some 8 years prior to such time. On May 3, 1907, he was set to work, with one Dodge, operating one of the defendant's machines called a padder. This apparatus, so far as pertinent, consisted of two rollers set in a frame, one above the other; the lower or smaller one being of brass and 9 inches in diameter, and the upper one some 14 inches in diameter, being of hard rubber with an iron core. Below these rollers was located a mangle consisting of a trough in which a wooden roller revolved. The trough was kept supplied with a preparation or compound called "filler," which is a fluid substance pressed into the fabric to make it heavier and denser, and suitable for shade purposes. The cloth, coming from other parts of the machine, passed around the wooden roller in the trough, becoming covered with the filler, then up to and between the brass and rubber rollers, which pressed the filler into the cloth. On the left end of the brass cylinder were cogs or gears which turned it. The rubber roller, weighing some 900 pounds, had no gears, but rested on the brass roller, and because of its weight turned with it. Both rollers revolved toward each other, the brass roller turning upward and the rubber one downward. Attached to the rubber roller at each end were adjusting screws, so that it might be raised upward from the brass roller. Two strips or widths of cloth were run parallel through the rollers at the same time, there being a space between the strips and a margin at each side where the cloth did not touch the rollers. After constant use the rollers became worn where they came in contact with the cloth, and thus the surface was uneven. This was especially so with the rubber cylinder. From time to time, as necessity required, for the purpose of overcoming this inequality and unevenness the rollers were ground; the brass roller being filed and the rubber one sandpapered. In order to grind the brass roller, the upper roller was raised from it about eight inches. The operator then took a board about eight or nine feet long, five or six inches wide, and one inch thick, on one side of which was attached a file and on the opposite side usually three cleats, each one inch in thickness.

This is the implement which it is claimed was unsafe. Running across the back of the frame, and about 18 or 19 inches from the rollers, and about 10 inches above the brass one, was a rod called a "stay." The board was caught on the stay and held in place by the cleat, and rested upon and extended below the roller, so that the file came in contact with the brass roller, which revolved at the rate of nearly 180 revolutions a minute. The operator did the filing by pressing down on the board with his hands. When the rubber was sandpapered, it was lowered so as to come into contact with the brass one, and which caused it to revolve. Sandpaper was attached to the board on the opposite side from the cleats, and the roller was revolved more slowly to prevent heating by friction, turning at about 50 revolutions per minute. The operator then, by pressing upon the board and sliding it along the stay, was enabled to grind and smooth the roller to an even surface.

The plaintiff worked on this machine for two weeks, and on May 17th was directed by Kospoth, the defendant's superintendent, with said Dodge, to grind the rollers. This was the first time the plaintiff had ever done this work of grinding. Early in the day in question, Kospoth gave the plaintiff one of these boards, of which there were several at hand, and showed him how to grind the brass roller. He worked at this filing until it was completed, which was between 11 o'clock and noon. He was then set to work sandpapering the rubber roller, and continued at this occupation until about 2 o'clock, when, as he testified, one of the cleats pulled off from the board he was using, causing him to lose his balance and fall forward toward the rollers, and his left hand was caught between them, and he was severely injured. It appeared that either of the three cleats could have been used. The cleat which pulled off was nailed on with 22 sixpenny nails, 11 of which were driven from the board into the cleat, and a like number from the cleat into the board. The nails were just the length of the thickness of both the cleat and board, but did not clinch. Other boards for the work were at hand, as the plaintiff knew. He examined the board used and testified the cleats were tight. There was no defect in the implement when handed to the plaintiff. No cleat was loose. The sandpaper was worn, and he assisted the superintendent in tacking on a fresh piece. He carried on the work for several hours with the board in his hands, and, if the cleat worked loose, he could readily have observed its condition, and have held the appliance on the stay by another cleat. The plaintiff was not a novice in the factory. He was of middle age, had been employed by the defendant about the factory for eight years, and was familiar, in a general way, with this machinery. The implement he used was a simple contrivance, and the work he did with it was not complicated or difficult to comprehend.

There are two or three plain principles of the law of negligence applicable to the existing facts which debar a recovery. (1) We appreciate the rule which requires the master to furnish suitable appliances for his servant; and we assume that Kospoth, the superintendent, was the defendant in delivering the board to the plaintiff. It has, however, often been held that a master is not liable in damages for injuries to his employé resulting from the use of a simple implement. Hart

v. Village of Clinton, 115 App. Div. 761, 764, 100 N. Y. Supp. 1092; Smith v. Green Fuel Econ. Co., 123 App. Div. 672, 108 N. Y. Supp. 45. The fitting of the board for grinding with the file or smoothing the rubber roller was obvious to any man of judgment. An experienced mechanic was not required to understand its construction. The manner of its use was also plain. The contrivance had long been used and without injuring any one. (2) It appears that there were other boards equipped and available for this grinding, and plaintiff knew where they were stored. Kospoth exercised his judgment in the selection which he made, and the furnishing of the board was a mere detail in the prosecution of the work and the running of the machinery. McConnell v. Morse I. W. D. D. Co., 187 N. Y. 341, 80 N. E. 190, 10 L. R. A. (N. S.) 419; Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725; Mahoney v. Cayuga Lake Cement Co., 126 App. Div. 164, 110 N. Y. Supp. 549. (3) In the use of simple implements the employé of judgment is charged with the duty of keeping watch of them; and for defects which occur while the work is in progress and which may easily be remedied the master is not accountable. The nailing on of these cleats was a simple matter not requiring a skilled mechanic, and the plaintiff himself understood this. The rule that the master is liable in damages for failure to furnish suitable appliances does not extend to a case of this kind. Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854.

Nor do we think the fact that the nails were not clinched through the cleat was a defect charging the defendant with negligence. The device had worked safely for a long time, and no complaint was ever made that it was imperfect or unsafe. In any event, its condition was patent to the plaintiff. In the case of Pelow v. Oil Well Supply Co., 194 N. Y. 64, 86 N. E. 812, relied upon by the respondent's counsel, the employé was a lad 16 years of age, and not experienced in the business. He was handling prosser pins which had become dangerous from use, and all the pins accessible to him were in like dangerous condition. The boy was set at the new and dangerous work without any instruction. In this case the plaintiff was instructed in the use of the contrivance, and the accident did not occur by reason of any lack of knowledge in the handling of the implement. The two cases are not parallel.

The judgment should be reversed and a new trial ordered. Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.