AMERICAN MFG. CO. v. ZULKOWSKI.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 104.

1. MASTER AND SERVANT (§§ 150, 153, 155*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS MACHINERY—DUTY OF INSTRUCTING SERVANT.

Where a machine which an employé is set to operate is dangerous, or a latent defect exists, it is the duty of the master to notify the servant, instruct him in the use of the machine, and warn him as to the particular dangers to be apprehended; and such duty is the more imperative where the servant is inexperienced and without knowledge of machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 299–302, 305–307, 310; Dec. Dig. §§ 150, 153, 155.*]

2. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Plaintiff lost his arm by having it caught in a machine used to wind cotton bagging into rolls, which he was operating in defendant's factory. When a roll was completed, the machine was stopped while it was removed and the material adjusted for a new one; and it was in making such adjustment that the accident happened, as plaintiff testified, through

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the sudden starting of the machine. Plaintiff was a Russian Pole, with a very limited knowledge of English, who had been a common laborer, and had no knowledge of machinery. He had operated the machine but four days, and all the instruction he received was given him by a boy in English. The machine was stopped by shifting a belt from a tight to a loose pulley by means of a lever, which, when the belt was entirely on the loose pulley, was held in a notch until released; but it did not appear that plaintiff was instructed of the necessity of so securing it, and there was testimony tending to show that, unless this was done, the belt might work back and start the machine. Unless the accident occurred by the starting of the machine, as plaintiff testified, it appeared that he must have been trying to adjust the bagging while the machine was in motion, which would be obviously dangerous. *Held*, that the case was one for the jury, and that their finding in favor of plaintiff would not be disturbed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1044–1050; Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Action at law by Valenti Zulkowski against the American Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 163 Fed. 550.

Magner & Carew (Thomas F. Magner, of counsel), for plaintiff in error.

Charles Dushkind (Abram J. Rose, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The defendant company was engaged in the borough of Brooklyn in manufacturing, among other things, jute bagging for covering bales of cotton for shipment. The plaintiff is a Russian Pole and was employed by the defendant to attend a machine called a calender. While so employed on the 15th day of July, 1904, he received injuries which resulted in the loss of his right arm. At the time of the accident he was 35 years of age. The plaintiff insists that while putting material in position to be operated upon by wrapping it around a square iron bar the machine suddenly started up, catching his hand between the bagging and the rapidly revolving bar and causing the injuries complained of. The defendant, on the contrary, asserts that the accident was due to the negligence of the plaintiff in endeavoring to place the material in position while the bar was in motion.

This action is at common law, unaffected by any statute changing or limiting the liability of employers. The sole question is whether the evidence justifies the verdict that the plaintiff was injured by the negligence of the defendant and without negligence on his part.

The machine in question was used for stretching and winding cotton bagging into tight bales. The bagging passes over and under a series of rollers, being introduced to the machine, in the first instance, while it is motionless. At the front of the machine is a square iron

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bar around which the cloth is adjusted by hand. When this is done the power is applied, the bar revolves and pulls the cloth through the machine. The power is turned onto the machine by shifting a belt from a loose to a tight pulley. When the proper length of bagging has been wound up, the fact is indicated by a clock. The operator, who is at the back of the machine, then stops it by turning the belt onto the loose pulley. This is accomplished by an iron lever which is pushed in or pulled out. When the machine is stopped the operator cuts off the cloth, removes the bale thus formed, reinserts the bar in the machine, wraps the end of the bagging around it and starts the machine to produce another bale. The belt is three inches wide and three-eighths of an inch thick. It is held in a fork and is moved from one pulley to the other by a lever which has a play of eight inches. When the belt is entirely moved from one pulley to the other the lever drops into a notch where it remains until lifted out by the operator.

The descriptions of the machine are contradictory and confused. It is exceedingly difficult from reading the record to form a definite conclusion as to the construction and operation of the machine in some of the important particulars in controversy. No model or photograph was introduced and there is nothing but a rudimentary and insufficient diagram a copy of which is attached to one of the briefs. It fails to show the belt, the pulleys and the fork. The belt-shifting apparatus is partly shown, but the most skillful expert would have difficulty in giving an intelligent description of its operation.

The rule of law applicable to these facts is well known. It is the duty of the master to furnish for the use of his servants proper, suitable, fit and sufficient machinery, means and appliances, to maintain them properly and keep them in repair. In a leading case decided by the Court of Appeals of New York, the court says:

"The servants shall be under no risks from imperfect or inadequate machinery, or other material means and appliances, or from unskillful or incompetent fellow servants of any grade. It is a duty or contract to be affirmatively and positively fulfilled and performed. And there is not a performance of it until there has been placed for the servant's use perfect and adequate physical means, and for his helpmeets fit and competent fellow servants, or due care used to that end." Laning v. N. Y. C. R. R. Co., 49 N. Y. 521, 10 Am. Rep. 417.

Where the machine is dangerous or a latent defect exists, it is the duty of the master to notify the servant, instruct him in the use of the machine, and warn him as to the particular dangers to be apprehended. In the case of New York Biscuit Co. v. Rouss, 74 Fed. 608, 20 C. C. A. 555, the court says:

"There was no evidence in the case, however, that the plaintiff had any knowledge of the two main sources of danger in operating, viz.: The failure to keep the eyes always on the right hand and never on the left, and the risk of pushing the dough above the rollers with an opened hand. The description which the plaintiff gave on the trial of the working of the machine, on which plaintiff in error principally relies, includes, of course, the experience gained by the accident itself. It was, upon the proof, fairly a question for the jury to determine whether the accident happened by reason of the machine exposing its operator to dangers of which the plaintiff knew nothing, which he had no reason to anticipate, and of which no one warned him."

In Pelow v. Oil Well Supply Co., 194 N. Y. 64, 86 N. E. 812, the court says:

"The implements in fact furnished were defective, as the jury could find, and the plaintiff was not told where he could get safe ones. He did not know that they were unsafe, for he had neither experience nor warning to guide him. He had the right to assume that his employer had discharged its duty toward him and that he could safely use the tools he was told to use. Even if the risk would have been obvious to a competent and experienced mechanic, we cannot hold as matter of law that it was obvious to an inexperienced boy put at a new kind of work with unsafe tools and without warning or instruction."

In Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, the court says:

"If persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained."

In the recent case of Klauder-Weldon Dyeing Machine Co. v. Gagnon (decided December 12, 1910) 183 Fed. 962, this court had occasion to consider the rule relating to hidden defects. The plaintiff was directed to repair a piston head by a process exceedingly hazardous unless a vent were made to permit the escape of steam. The plaintiff was an ignorant man who had no knowledge of the particular danger to be apprehended and we held that it was negligence in the defendant to set him at such work without informing him of the danger to be apprehended. The court says:

"The foreman knew all these facts—the blacksmith knew none of them. The danger was hidden, nothing which the blacksmith could see indicated to him the peril lurking in the piston head. It was clearly the duty of the foreman to inform the plaintiff of this peril which would confront him the moment heat was applied, unless the escape of steam was provided for. The making of the vent was not a mere incident or detail in the heating process; it was a momentous fact of which it was absolutely essential the plaintiff should know before he was required to do the work."

Strictly speaking, it cannot be said that there was a latent danger or defect in the machine we are now considering, but it was nevertheless the duty of the defendant in placing an ignorant workman in charge of the machine to instruct him fully as to its workings. In giving these instructions, regard should have been had to the ignorance and inexperience of the plaintiff, his imperfect knowledge of the English language and the fact that theretofore he had done nothing but manual labor. There can be no serious dispute, we think, as to the following propositions:

First.—The plaintiff was a Russian Pole, speaking and understanding the English language imperfectly. Until employed by the defendant he had been a common day laborer engaged in work requiring only the most ordinary intelligence and no expert knowledge. He had never worked upon a machine of any kind and possessed only the most rudimentary knowledge of machinery.

Second.—While working for the defendant his right arm was caught in a calender machine and was so mangled and crushed that amputation just below the shoulder was necessary.

Third.—The machine was about 10 feet long, 5 feet wide and 4 feet high. It was not a complicated machine, but on the other hand, it was not simple in construction or operation. It required considerable skill and judgment to operate it. If improperly operated it might become exceedingly dangerous.

Coming to the disputed facts, the jury may have found, if they believed the plaintiff's testimony, that he received insufficient instruction as to the use of the machine because of the immaturity and lack of expert knowledge of his instructor, who was, he says, a boy 14 or 15 years of age. This boy was unable to explain the operation of the machine to the plaintiff as he was ignorant of the Polish language. It is not pretended that any one explained the machine to him in Polish. The jury may have found also that no instructions were given him regarding the belts and pulleys and as to the importance of seeing that the belt was entirely off from the live pulley when the machine was stopped. In other words, they may have found that he was not instructed as to the necessity, in every case where the machine was stopped, of seeing that the lever which operated the shifting fork was safely lodged in the notch at the side of the machine. They may also have found that the machine was so constructed that after it had been stopped, if the belt had not been entirely removed from the live pulley by lodging the lever arm in the notch, it might work back upon the pulley and start the machine automatically. The defendant's foreman of machinery was asked:

"Q. Don't you know that if that belt was on the tight pulley it might be slipped part way on the loose pulley and left part way on the tight pulley and that would be sufficient to start the machine? A. It might. It could if there was no load to it. Q. So that it might be under certain conditions that moving that belt part way, so that it would be part way on the loose and part way on the tight pulley, would start the machine in motion; is that right? A. Yes. * * * On the face of the pulley is a crown that is higher in the centre than it is at the edges, forming a sort of convex, and by this it would draw the belt always onto the pulley, unless you get it over beyond the high point, you have got to get it beyond, and then she will follow on. Both pulleys have this crown. So if it is more than half on either pulley it will work either on or off."

This testimony is not altogether clear, but from it the jury may have reached the conclusion that the machine might start unless in every case the shifting lever was actually locked in the notch. This being so, they would have been justified in finding that it was the duty of the defendant to inform the plaintiff of the danger which might follow a failure to lock the lever.

If the plaintiff's version of the transaction be untrue, it must follow as a manifest conclusion, that he was injured by his own gross carelessness in attempting to adjust the bagging to the bar while the latter was making 95 revolutions a minute. In deciding that the defendant's theory was not a fair version of the accident, the jury were justified in considering the ordinary instincts of self-preservation which govern human conduct. Even the most ignorant laborer would know that if he placed his hand in such a position it would surely be caught and injured. No expert knowledge was required to enable him to appreciate this self-evident fact. And in support of his theory that

the machine started automatically, the jury were justified in considering the improbability that he would do an act which would seem to impeach his sanity.

The plaintiff only worked on the machine four and a half days, he had no friends or acquaintances in the defendant's factory, he was removed from the scene immediately after the accident and he had no technical knowledge of machinery. In such circumstances he must depend upon his own testimony alone, and inevitably must be confronted by the testimony of a large number of witnesses for the defendant. The trial court was not for this reason justified in taking the case from the jury. Though the plaintiff stands practically alone, he swears to a cause of action and the jury believed his testimony.

The question for us to determine is not whether we believe the plaintiff's testimony, but whether it should have been submitted to the jury and is sufficient to sustain their verdict. We conclude that this question must be answered in the affirmative.

Numerous exceptions were taken to the charge and to the refusal of the court to charge the defendant's requests, but we think they fail to point out a case of reversible error.

We are forced to the conclusion that the case was properly submitted to the jury and that there was sufficient evidence to sustain the verdict.

The judgment is affirmed.

WARD, Circuit Judge, concurs in the foregoing opinion, but thinks that the judgment should be reversed because of error in refusing the defendant's requests on the subject of contributory negligence.