## DILLON v. MATTHEWS SLATE CO.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

MASTER AND SERVANT (§ 150*)—INJURIES TO SERVANT—BLASTING—INSTRUCTIONS.

Plaintiff, a workman in a quarry, was directed to make an "air shot." Plaintiff knew how to make such a shot, and prepared and fired two such shots which failed to break the rock. Thereupon, on his own responsibility, he obtained a stick of dynamite and attempted to insert it in the bore. It stuck, and, finding that he could not push it in with a wooden stick, he took an iron bar and jammed the dynamite so hard that it exploded and inflicted the injuries complained of. *Held*, that defendant was not negligent in failing to instruct plaintiff with reference to the manner of making air shots of which plaintiff had knowledge, nor with reference to the use of dynamite which he was not directed to use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 299–301, 305–307; Dec. Dig. § 150.*]

Betts, J., dissenting.

Appeal from Trial Term, Albany County.

Action by Patrick Dillon against the Matthews Slate Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

Douglas & Gordon (Edward W. Douglas, of counsel), for appellant. A. Page Smith, for respondent.

PER CURIAM. The plaintiff was injured while blasting in defendant's quarry. He was directed to make what is termed an "air shot," which is made by leaving an air chamber between the powder and the wadding. The negligence upon which the plaintiff's recovery is predicated is lack of instruction to the plaintiff as to the manner of making such shot.

The recovery cannot be sustained on such ground. The plaintiff himself testified that he knew how an air shot was made, and that he was not making such a shot when he was injured, but was attempting, without being instructed so to do, to make a blast of an entirely different kind. He prepared and fired one air shot which failed to break the rock, and then prepared another, which also failed. Thereupon, on his own responsibility, he obtained a stick of dynamite and attempted to insert it in the bore. It stuck in the boring, and finding he could not push it with a wooden stick, he took an iron bar

and jammed the dynamite so hard that it exploded and inflicted the injuries for which he has recovered.

The plaintiff had been about the quarry long enough presumably to know that hitting dynamite confined in a boring with an iron bar was likely to explode it. Even if he did not know this fact, the defendant is not responsible for failing to instruct him because the plaintiff was doing something on his own responsibility and contrary to the instructions of the defendant's superintendent, which were that he make an air shot which was wholly made with powder and not with dynamite.

The defendant therefore was not responsible for failing to instruct the plaintiff as to the manner of making an air shot, because the plaintiff knew how to make it. It was not responsible for failing to instruct the plaintiff with respect to the use of dynamite, because it gave him no directions to use dynamite in making the blast.

It follows that the order and judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.

BETTS, J. (dissenting). The plaintiff was employed by the defendant as a laborer at one of its slate quarries in Washington county. He had been employed at different times by it for three or four years, and at the time in question had worked for them about a month or two. He shoveled rubbish, which there meant poor rock, not good for slate, did errands for his superiors, and did the kind of general laboring work that he was required to do. The defendant company had three quarries, and Daniel Flarity was its general superintendent. There was a foreman in each of the other quarries, and at the quarry in which the accident happened, which was the Eagle quarry, one Thomas Reese was the foreman or pit boss. The plaintiff had carried powder and dynamite for each of them at different times. The work that was being carried on on the 23d of September, 1908, was blasting away (for the purpose of getting to the good vein of slate) the poor rock which was on top of it. Flarity, the superintendent, was not at the Eagle quarry on that day, September 23d. Reese was there in the morning until 9 o'clock or half past 9, when he went away to attend a funeral and did not come back during that day. In the absence of Flarity, plaintiff took his orders from Reese, the pit boss. On the day in question, they were sinking a drill hole pretty nearly horizontal into the bad rock, and eventually bored a hole about 12 feet in depth which was about 2½ inches around. The plaintiff had worked helping take out slate rock, broken slate rock out of the pit that morning, helped break them up with hammer and wedge, big blocks of slate rock, and shovel away the pieces, and he had helped Mr. Reese set up the steam drill. Before Reese went away, he told the plaintiff "when the hole was done to dry it out and make an air shot and fire it." Then Reese went away, and the plaintiff kept on taking out slate rock while the drill was working the hole into the rock, and he continued that work until about half past 3. Then he helped take the steam drill down, and a couple of Hungarians that were there helped to take it out, and they

had helped to make the hole and had run the drill. Then plaintiff dried the hole out, and in so doing he took a bag, tied it on the end of a scraper, and ran it in the hole, drying the hole out; dried it out with this bag, pulling the bag back and forth. There had been water in the hole, used in working the steam drill.

After drying the hole and pulling the bag out, the plaintiff made an air shot; that is, he put in his powder and then the electric exploder, as I understand the evidence, then he put in a wad made out of a rag to within seven or eight inches of the powder, then he tamped it with tamping outside; that is, with slate chips smashed up fine, putting in about four feet of chips and tamping it with a wooden stick. There was a magazine for explosives kept for safety at some little distance from this pit at which the plaintiff and the Hungarians were working, but for convenience some powder and some dynamite were kept in the pit in a hole under a rock. There were four sticks of dynamite there, and it was from this place, from this hole in the pit, under the rock, that the plaintiff got his powder. It was there with a big stone over it. After the plaintiff had finished the packing of the hole, he connected his wires and gave warning to the others and fired. Nothing followed except the blowing of the powder and wad out of the hole. The stone was not cracked or injured in any way. Then the plaintiff refilled the hole, put in about eight feet of powder, getting it from the same place, and tamped it up without leaving any air chamber or putting in any wad, getting his powder from the same place. Thereupon he connected the wires the second time to the battery and exploded it again, with the same result that the rock was not injured and the powder and tamping were blown out of the hole. Then the plaintiff went back to this hole in the pit and got more powder and these four sticks of dynamite. These sticks were about seven inches long and about an inch around, and he also took some powder with him intending to load the hole with dynamite sticks and powder. He took a stick of dynamite and threw it in the hole. It went in about 2½ or 3 feet. He took the wooden stick and tried to push it in. The dynamite did not yield and go in any farther, so he took a wire and tried to take it out, and then an iron scraper with a spoon on one end, and tried to pull the dynamite out again, which was unsuccessful, and also tried to clean the dust out of the hole. Then he took a wooden stick and pushed on it, and the dynamite broke after giving away some, and then it filled the hole up tight. Then he took an iron bar and put it in the hole and pushed the dynamite. Once it gave a trifle the first time, and then he pushed again, and the explosion followed, and the plaintiff was severely injured, losing one eye and nearly losing the other and was badly hurt, and for that injury this action is brought. The negligence claimed is placing the plaintiff at dangerous work with which he was unfamiliar and not giving him any warning or giving him safe tools and appliances.

The plaintiff had fired some perpendicular holes in good slate before, 2 feet or 2½ feet or 18 inches deep and 1½ inches in diameter. He had never blasted a roof hole before, never used dynamite, never been

told about using dynamite, although he had seen dynamite used in the quarry. He had seen Flarity use dynamite, and he had brought powder and dynamite down from the shanty or magazine for Mr. Flarity and Mr. Reese. Mr. Reese fired these steam drill blasts when Flarity was away and gave the plaintiff instructions as to his work when Flarity was away.

The only witness sworn as to the accident, the nature of the accident, and what he did was the plaintiff.

It is contended by the defendant that the plaintiff was guilty of contributory negligence because he should have known that it was dangerous to attempt to push in the dynamite in this hole with an iron bar; but the plaintiff swears he did not know it was dangerous, and that he had never been so told and he could not read or write.

The only witness sworn by the defendant was Flarity, who was not there at the time of the accident. Reese, who might have contradicted the plaintiff if he testified untruthfully as to directions or what was done, was not sworn, although the plaintiff's attorney in his brief says that Reese was present at the time of the trial. Flarity testified that he had told Reese, and that the plaintiff was there or near there, to put in this particular hole and leave the hole there and pull the machine out and leave it until we cleaned out the rock down under it. "The plaintiff was present when I said that. He was helping on the machine." Flarity testifies that he told Reese to put in this hole and pull down the machine and clean out the rubbish. "Leave that hole until we got out this rock, then take a loader and go up there and fire this hole." Flarity also says that he set up the machine, which the plaintiff denies.

It does not appear but that all the rock and rubbish required or desired by Flarity to be cleaned out before firing this hole had been cleaned out, as the plaintiff at least was working on it until half past 3 in the afternoon.

Reese was not produced by either side.

Notices as required by the Department of Labor were posted in and about the quarry, but the plaintiff could not read or write.

From the testimony submitted the jury could have found, if they believed the plaintiff, that he was put at this work of cleaning out this rubbish and firing this hole after it was drilled by Reese without warning as to danger, and that he was not given any other work to do, and that he had not completed this work when the accident happened. The tools which he used in this work were the tools that were there in the quarry furnished by the defendant. The explosives that he used were in the pit furnishd by the defendant, and the plaintiff had seen both Reese and Flarity use them, and he testifies that he did not know that dynamite was any more dangerous than powder and that he had never been so told.

The defendant attempts to make a point that either Reese or plaintiff was only told to "fire this hole," not to keep on firing it until the rock was broken; but, of course, that is a mere play upon words, as the object in firing the hole at all was to break up the bad rock so it could be removed and get down to the good vein of slate.

Smashing and removing the bad rock was the employment at the time, not simply firing this hole for pleasure or as an experiment.

Upon this evidence the judge sent the case to the jury under a very careful charge, and the jury found a verdict for $6,000 for the plaintiff for the injury which he sustained.

It was, of course, the duty of the defendant to furnish the plaintiff with a reasonably safe place to do his work and with reasonably proper tools and appliances to do the same, and to warn him of unknown dangers attending such work not readily apparent to plaintiff. The plaintiff used the tools and appliances that were furnished, and he says he was following out instructions, and nobody appears to deny that he was following out the instructions that he was given. He claims that he was put doing new work of blasting this kind of hole without any instructions as to its danger and followed out the methods that he had seen used.

Under the authority of Pelow v. Oil Well Supply Company, 194 N. Y. 64, 86 N. E. 812, and the cases there cited, I think the judgment should be affirmed.

It is perhaps a close case. Dillon was not an intelligent man, but was apparently quite an ignorant man. There is nothing to show that he was telling an untruth, or that he was guilty of contributory negligence, unless this court assumes as a matter of law that every person who has ever seen dynamite used should know that it was dangerous to pound it with an iron or unduly press or confine it. I do not think in this case we are authorized to make any such holding.

The judgment and order appealed from should be affirmed, with costs to the plaintiff.